IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES McPHERSON, | : | |
| Plaintiff | : | No. 1:19-cv-01865 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| COUNTY OF DAUPHIN d/b/a | : | |
| DAUPHIN COUNTY PRISON, and | : | |
| JOHN DOES and JANE DOES, | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court is Defendant County of Dauphin d/b/a Dauphin County Prison ("Defendant County")'s motion to dismiss (Doc. No. 8) Counts III and VI of Plaintiff Charles McPherson ("Plaintiff")'s complaint (Doc. No. 1) for failure to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant County's motion will be denied.

**I.  BACKGROUND**

**A.  Procedural Background**

Plaintiff initiated the above-captioned action on October 28, 2019 by filing a complaint against Defendant County and unnamed John/Jane Does ("Individual Defendants"). (Doc. No. 1.) The complaint asserted federal and state claims against the Individual Defendants in addition to claims against Defendant County for violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 for the Rehabilitation Act of 1973 ("RA"), as well as a Monell claim for failure to train and supervise Individual Defendants and failure to create or implement policies that would reasonably accommodate the mental disabilities of suspects or detainees. (Doc. No. 1.) Defendant County filed the instant motion to dismiss Counts III and VI of the

complaint on December 27, 2019. (Doc. No. 8.) Having been fully briefed (Doc. Nos. 9-11), the motion is ripe for disposition.

    **B.**    **Factual Background** [1]

Plaintiff is an adult African-American male who was diagnosed with bipolar disorder and paranoid schizophrenia in 2011. (Doc. No. 1 at ¶¶ 4, 9.) On January 23, 2019, Plaintiff, who was experiencing a bipolar episode at the time, was driving to his wife's house to get his medication when he "made a wrong turn, drove in the opposite direction down a one-way street, and then parked his car on the sidewalk." (Id. ¶¶ 10, 12.) Plaintiff was subsequently transported to Dauphin County Prison ("County Prison") by Harrisburg police officers. (Id. ¶ 13.) Plaintiff's wife contacted the County Prison and "informed the County Prison of Plaintiff's bipolar disorder, his current mental state, and his need for medication." (Id. ¶ 15.) Additionally, Plaintiff "advised the Individual Defendants that he suffered from bipolar disorder." (Id. ¶ 16.)

Plaintiff alleges that subsequent to his arrival at the County Prison, the Individual Defendants "placed Plaintiff in a holding cell" (id. ¶ 18), "threatened Plaintiff with physical harm and yelled at him to calm down" (id. ¶ 19), "restrained Plaintiff with a leather belt and handcuffs, and then locked him in the holding cell" (id. ¶ 21). Plaintiff further alleges that the Individual Defendants "entered Plaintiff's cell and forced him into a chair with restraints, cuffed his hands behind his back, and placed a spit mask over his head" (id. ¶ 24), after which one of the male Individual Defendants "lifted the spit mask, and sprayed mace into Plaintiff's mouth and nose" (id. ¶ 26), then "placed the spit mask back on Plaintiff and massaged the mask into Plaintiff's face in order to enhance the effects of the mace" (id. ¶ 27), and "pushed the mask up into

---

[1] The following factual background is taken from the allegations of Plaintiff's complaint (Doc. No. 1).

2

Plaintiff's eyes in order to get the mace into his eyes" (id. ¶ 28). Plaintiff asserts that he "remained several hours, cuffed and masked in the restraint chair" (id. ¶ 32), and that at one point "the Individual Defendants checked Plaintiff's handcuffs; in so doing, the Individual Defendants pushed his back forward, while jerking his head backward" (id. ¶ 33). Additionally, Plaintiff alleges that "[o]ne of the male Individual Defendants jabbed Plaintiff's face with his elbow." (Id.)

While Plaintiff was being detained at County Prison, he alleges that his sister, Linsey Reyes, called the "Dauphin County Court" and spoke with a judge's secretary, informing the secretary of Plaintiff's bipolar disorder and that "he needs help." (Id. ¶¶ 34-35.) Plaintiff was later taken to a courtroom, and alleges that the Individual Defendants "falsely represented that Plaintiff 'bit a sergeant'" (id. ¶ 38) and "kept the spit mask on Plaintiff in the courtroom" (id. ¶ 39). The judge set Plaintiff's bail at $15,000. (Id. ¶ 40.) Plaintiff "could not meet bail and, therefore, remained incarcerated until the preliminary hearing." (Id. ¶ 41.) Plaintiff asserts that "Defendants placed Plaintiff in A-Block where he was in solitary confinement for 14 days" (id. ¶ 44) and that he "could not make any phone calls and never received his medication" (id. ¶ 45).

Plaintiff alleges that his wife "took Plaintiff's prescribed medicine to the County Prison and spoke with Individual Defendants about Plaintiff's condition" (id. ¶ 42), but "[t]he Individual Defendants refused to take Plaintiff's medicine" (id.). Further, Plaintiff's wife and sister "made numerous calls to the County Prison and were transferred to various units, such as the Psychiatric Unit." (Id. ¶¶ 43, 46.) However, "[n]otwithstanding the numerous calls made on Plaintiff's behalf, the Individual Defendants never treated Plaintiff for his bipolar disorder." (Id. ¶ 47.) Plaintiff alleges that at his preliminary hearing, he pleaded guilty "because he was terrified of remaining incarcerated." (Id. ¶ 48.)

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions set forth as factual allegations. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted). A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## III. DISCUSSION

### A. Plaintiff's Claims for Violations of the ADA and RA (Count III)

#### 1. Applicable Legal Standard

Count III of Plaintiff's complaint (Doc. No. 1) asserts claims against all Defendants for violations of the ADA and RA due to denial of services and a failure to make reasonable accommodations for Plaintiff's disability. In order to establish a violation of Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." See Mutschler v. SCI Albion CHCA Health Care, 445 Fed. App'x. 617, 621 (3d Cir. 2011) (citing 42 U.S.C. § 12132). The same standard applies to claims under the RA. See Matthews v. Pennsylvania Dep't of Corr., 613 F. App'x 163, 166–67 (3d Cir. 2015) ("The ADA and the Rehabilitation Act have the same standard for liability and are to be interpreted consistently.") Additionally, a plaintiff can assert a claim for violations of the ADA or RA based on a failure to accommodate. See Muhammad v. Court of Common Pleas, 483 Fed. Appx. 759, 763 (3d Cir. 2012). In order to make such a claim, a plaintiff must demonstrate that "but for the failure to accommodate, he would not be deprived of the benefit he seeks." See id. at 764.

#### 2. Arguments of the Parties

Defendant County argues that Plaintiff "did not suffer 'discrimination' within the meaning of the ADA or RA" because denial of medical care in a detention context is not actionable under the ADA.[2] (Doc. No. 9 at 4-6.) Further, Defendant County argues that insofar

---

[2] Defendant County does not dispute that Plaintiff is a qualified individual with a disability for purposes of the ADA/RA analysis.

5

as Plaintiff alleges liability based on a failure to accommodate Plaintiff's disability, Plaintiff has failed to identify a program or activity that Defendants allegedly prevented him from participating in. (Doc. No. 11 at 5.) Plaintiff argues that his claims are actionable because Plaintiff does not allege "negligent misconduct" but, rather "deliberate indifference." (Doc. No. 10 at 8-10.) Plaintiff also argues that medical care is a service, program, or activity covered by the ADA. (Id. at 8-9.)

### 3. Whether the Court Should Dismiss Plaintiff's ADA and Section 504 Claims Against Defendant County

Upon review of Plaintiff's complaint, the parties' arguments, and the applicable law, the Court will not dismiss Plaintiff's ADA and RA claims against Defendant County. In addition to the allegations noted in the factual background above, Plaintiff's complaint includes the following allegations in support of his ADA/RA claims:

> The County Prison is a 'public entity,' as defined by the ADA.
>
> The County Prison receives federal financial assistance and, thus, are duty-bound to comply with Section 504 of the Rehabilitation Act of 1973.
>
> The Individual Defendants are employed by the County Prison.
>
> Plaintiff suffers from bipolar disorder and paranoid schizophrenia, each being a 'disability,' as defined by the ADA and RA.
>
> From the time of Plaintiff's arrest and throughout his incarceration, the Defendants knew that Plaintiff suffered from bipolar disorder.
>
> The ADA prohibits public entities from denying the benefits of services and/or programs to disabled persons.
>
> Likewise, the ADA prohibits public entities from discriminating against individuals based on their disability.
>
> Pursuant to the RA, local and state governments that receive federal financial assistance must reasonably accommodate disabled

> individuals so that they may have access to the same benefits and services as non-disabled persons.
>
> Despite their knowledge of Plaintiff's disability, one or more of the Defendants refused to provide Plaintiff with medical services and/or medical treatment, in violation of the ADA and RA.
>
> Despite their knowledge of Plaintiff's disability, one or more of the Defendants refused to reasonably accommodate Plaintiff's need for medical services and/or treatment, in violation of the ADA and RA.
>
> Defendants acted with evil intent, malice[,] and reckless disregard for Plaintiff's rights under the ADA and RA.
>
> As a direct and proximate cause of the Defendants' ADA and RA violations, Plaintiff suffered humiliation, trauma, emotional distress[,] and pain and suffering.
>
> As a direct and proximate cause of the Defendants' ADA and RA violations, Plaintiff suffered economic loss and damages.

(Doc. No. 1 ¶¶ 82-95.) Although Defendant County is correct that the Third Circuit Court of Appeals has ruled that allegations of inadequate medical treatment are distinct from disability-based discrimination under the ADA, see, e.g., Kokinda v. Pa. Dep't of Corr., 663 F. App'x. 156, 159 (3d Cir. 2016), other courts within this Circuit have drawn distinctions between claims alleging inadequate medical treatment and claims alleging denial of access to prescription medications. See Kloss v. Correct Care Sols., No. 1:18-CV-0025, 2018 WL 6268270, at *4 n.4 (W.D. Pa. Oct. 31, 2018) (stating that "[d]enying access to medications is not, however, a medical judgment or medical negligence, and such claims can be actionable under the ADA"), report and recommendation adopted sub nom. Kloss v. Correct Care Sols., LLC, No. CV 18-25, 2018 WL 6266921 (W.D. Pa. Nov. 30, 2018); see also McKissick v. Cty. of York, No. 1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (allowing an ADA claim to proceed where prison officials refused to provide a detainee with methadone). The Third Circuit

7

has not addressed this distinction; however, other circuit courts of appeals have clearly held that denial of access to prescription medications is actionable under the ADA. See Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 286-287 (1st Cir. 2006) (stating that "[a]ccess to prescription medications is part of a prison's medical services and thus is one of the services, programs, or activities covered by the ADA. Unlike the defendants' decisions regarding the diagnosis and treatment of [Plaintiff's] ALS, the defendants' failure to give him access to his medications is not, on these facts, a medical "judgment" subject to differing opinion—it is an outright denial of medical services") (internal citation omitted).

In the present case, Plaintiff not only alleges that Defendant County was informed on multiple occasions that he was suffering from a bipolar episode and needed medication, (Doc. No. 1 ¶¶ 15-16, 35, 43, 46), Plaintiff further alleges that his wife "took Plaintiff's prescribed medication to the County Prison" only for Defendants to refuse to take the medication. (Id. ¶ 42). Instead of providing Plaintiff access to his prescription medications, Defendant County "placed Plaintiff in A-Block where he was in solitary confinement for 14 days," a housing placement that meant "Plaintiff could not make any phone calls." (Id. ¶¶ 44-45.) Throughout his time in incarceration, Plaintiff was never given access to his prescribed medication. (Id.) Therefore, the Court finds that Plaintiff has adequately alleged that he was denied access to his prescription medications in violation of the ADA. Accordingly, the Court will deny Defendant County's motion to dismiss Count III of Plaintiff's complaint.

B. Plaintiff's Monell Claim Under 42 U.S.C. § 1983 (Count VI)

1. Applicable Legal Standard

Count VI of Plaintiff's complaint asserts a claim against Defendant County for failure to properly train or supervise the Individual Defendants and failure to create or implement policies to reasonably accommodate the mental disabilities of detainees. (Doc. No. 1.) In Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court established that municipalities can be held liable for constitutional violations under 42 U.S.C. § 1983. See id. at 690. However, municipal liability is limited to those actions for which the municipality itself is actually responsible. See Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). Specifically, liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." See Monell, 436 U.S. at 694. That is, a municipality is subject to Section 1983 liability to the extent it maintained an unconstitutional custom or policy that caused the constitutional violations alleged by the claimant, but is not liable for injuries on the sole basis that they were inflicted by its employees. See id.

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." See City of Canton v. Harris, 489 U.S. 378, 385 (1989). A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'" See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)). "[A] policy or custom may also exist where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to

result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id. In order to recover from a municipality under this theory of liability, a Plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." See City of Canton, 489 U.S. at 385.

### 2. Parties' Arguments

Defendant County argues that "Plaintiff's municipal liability claim essentially amounts to an argument that if some sort of prison policy relating to disorderly, mentally ill inmates had existed, his harm could have been avoided." (Doc. No. 9 at 7.) Specifically, Defendant County argues that "Plaintiff does not identify any relevant 'policy' or 'custom' attributable to [Defendant] County" but instead "alleges the County should have created policies on certain subjects." (Id. at 10.) Defendant County asserts that "there is nothing obvious about the need to train corrections personnel on the mental health needs of 'argumentative and belligerent' detainees" and that "it is even less clear how the absence of such training could have caused Plaintiff's alleged harms." (Id. at 11.) Further, Defendant County notes that "Plaintiff also has not pled a series of past constitutional violations that would have apprised [Defendant] County of the need for the policies he proposes." (Id. at 12.) Plaintiff contends that he has adequately stated a claim for Defendant County's liability pursuant to Monell. (Doc. No. 10 at 12.) Specifically, Plaintiff argues that "Defendant County is liable because it purportedly 'endorsed Stepping Up, a policy that recognizes the seriousness of mental illness among inmates and detainees'" (id.) (citing Doc. No. 1 ¶ 117) but "apparently failed to follow through as there is no evidence that the policy has been implemented at the County Prison" (id.). Further, Plaintiff argues that the Third Circuit's decision in Natale, 318 F.3d 575, indicates that "the lack of policy

10

may be sufficient to impose liability," and the totality of Plaintiff's claims should justify liability under this standard. (Id.)

### 3. Whether the Court Should Dismiss Plaintiff's Monell Claim

Upon review of Plaintiff's complaint, the parties' arguments, and the applicable law, the Court will not dismiss Plaintiff's Monell claim against Defendant County. In addition to the allegations noted in the factual background above, Plaintiff's complaint includes the following allegations in further support of his Monell claim:

> The County Prison failed to take steps to properly train and/or supervise the Individual Defendants.
>
> The County Prison failed to create or implement policies that take into account an individual's mental condition before when [sic] detaining the individual.
>
> The County Prison failed to create and/or implement a policy for responding to credible information that a detainee suffers from a mental disability.
>
> The County Prison failed to create or implement policies that reasonably accommodate a suspect and/or detainee's mental disability.
>
> Upon information and belief, the County Prison endorsed Stepping Up, a policy that recognizes the seriousness of mental illness among inmates and detainees.
>
> The County Prison failed to ensure that such policies, if in existence, were carried out lawfully.
>
> The County Prison failed to ensure that the Individual Defendants were instructed on the constitutional and statutory rights of mentally disabled persons who appear to engage in disorderly conduct.
>
> The County Prison failed to ensure that the Individual Defendants were instructed regarding their duty to provide disabled persons in their custody with medical care, treatment, and a reasonable accommodation.

11

> Accordingly, the County Prison is liable for the Individual
> Defendants' unconstitutional misconduct, in accordance with
> Monell v. Department of Social Services, 436 U.S. 658 (1978).

(Doc. No. 1 ¶¶ 113-121.) In this case, the Court finds that Plaintiff's complaint alleges sufficient facts to give rise to municipal liability under Section 1983. Under circumstances involving the failure to provide medical care in incarceration, the Third Circuit Court of Appeals has found that "the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions" is a "glaring omission" in a program of medical care that could justify liability under Monell. See Natale, 318 F.3d at 584-85. The Third Circuit has further noted that deliberate indifference may exist in circumstances where there was "'objective evidence that [a] plaintiff had a serious need for medical care,' and prison officials ignored that evidence" or "where 'necessary medical treatment is delayed for non-medical reasons.'" See id. at 582 (citing Nicini v. Morra, 212 F.3d 798, 815 n.14 (3d Cir. 2000); Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment." See Monmouth Cty., 834 F.2d at 347 (citing Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)).

Plaintiff here alleges that he has a diagnosis for bipolar disorder, a condition for which he needs medication. (Doc. No. 1 ¶ 9.) Plaintiff further alleges that the Individual Defendants and Defendant County were made aware of his condition and his need for medication on multiple occasions, by Plaintiff himself and by his wife and sister, but Defendant County failed to provide him with his prescribed medication or any other form of medical treatment. (Id. ¶¶ 15-16, 42-43, 46-47.) Under the standard set forth in Natale, the lack of an affirmative policy regarding how to address the serious medical needs of a detainee can give rise to Monell liability. See Natale, 318 F.3d at 584-85. Further, the Natale Court noted that "[a reasonable jury could] infer that the

failure to establish a more responsive policy caused the specific constitutional violation of which the [plaintiffs] complain, i.e., the failure to administer insulin to [plaintiff] in a timely fashion." See id. at 585. Defendant County fails to distinguish Natale from the circumstances in the present case. Defendant County argues that the Court should disregard Plaintiff's argument that Natale applies because "there is a clear difference between failing to enact a policy recognizing a diabetic's need for insulin and the failure to enact a policy that somehow grooms officers to respond to 'disorderly conduct' differently when the conduct arises from mental illness." (Doc. No. 11 at 6.) As an initial matter, Defendant County cites no authority to support a contention that a serious medical need arising from a mental illness may be ignored but a serious medical need arising from another medical condition may not. Further, Defendant County ignores Plaintiff's contentions that:

> The County Prison failed to create and/or implement a policy for responding to credible information that a detainee suffers from a mental disability.
>
> The County Prison failed to create or implement policies that reasonably accommodate a suspect and/or detainee's mental disability.
>
> The County Prison failed to ensure that such policies, if in existence, were carried out lawfully.
>
> The County Prison failed to ensure that the Individual Defendants were instructed regarding their duty to provide disabled persons in their custody with medical care, treatment, and a reasonable accommodation.

(Doc. No. 1 ¶¶ 115-116, 118, 120). For the foregoing reasons, consistent with Natale, the Court finds that Plaintiff has adequately pleaded facts that suggest deliberate indifference on the part of Defendant County. Accordingly, the Court will deny Defendant County's motion to dismiss Count VI of Plaintiff's complaint.

## IV.     CONCLUSION

For the foregoing reasons, Defendant County's motion to dismiss (Doc. No. 8) will be denied.  An Order consistent with this Memorandum follows.